**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Case No. H-06-3335** |
| **2121 KIRBY DRIVE, UNIT 33, HOUSTON, TX.,** | § | |
| | § | |
| | § | |
| **ASSETS OF KLL & LPL INVESTMENTS, LTD.,** | § | |
| | § | |
| | § | |
| **$22,680 in BANK OF AMERICA ACCOUNT NO. 0026-6253-0707** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## MOTION TO DISMISS COMPLAINT

DAVID R. JONES
Attorney-In-Charge
Texas Bar No. 00786001
Southern District of Texas Bar No. 16082
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
(713) 228-1331 (Fax)

SAMUEL J. BUFFONE
Of Counsel
Ropes & Gray LLP
One Metro Center
700 12th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 508-4657
(202) 508-4650 (Fax)

*Attorneys for Linda P. Lay*

# TABLE OF CONTENTS

Page

BACKGROUND .................................................................................................................2

ARGUMENT .....................................................................................................................6

I.    A FORFEITURE COMPLAINT MUST GIVE ADEQUATE NOTICE TO
      CLAIMANTS AND SUPPORT A REASONABLE BELIEF THAT FORFEITURE
      CAN BE PROVEN BY A PREPONDERANCE OF THE
      EVIDENCE AT TRIAL ...........................................................................................6

      A.    Recent Amendments to the Civil Forfeiture Statute and Procedural Rules ...........6

      B.    Post-CAFRA, the Government Must Prove the Guilt of the Property
            Subject to Forfeiture by Demonstrating By a Preponderance of the
            Evidence Either a Substantial Connection to Money Laundering, or
            that the Full Value Sought is Traceable to the Predicate Offense ..........................8

            1.    Forfeiture is contingent upon the government's ability to prove that
                  property is "tainted" by its involvement in crime.......................................8

            2.    The government must prove each element of civil forfeiture by a
                  preponderance of the evidence ................................................................11

      C.    The Government Must Strictly Adhere to Procedural Rules Requiring
            Particularly in the Complaint Sufficient to Ensure that Claimants Can
            Develop a Defense and To Support a Reasonable Belief that the
            Government Will Be Able to Meet Its Burden of Proof At Trial..........................12

II.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO
      MEET THE PARTICULARITY REQUIREMENTS OF SUPPLEMENTAL
      RULES G(2)(f) AND E(2)(a)...................................................................................13

      A.    The Complaint Does Not Support a Reasonable Belief that the Government
            Can Prove Forfeiture by a Preponderance of the Evidence or Enable
            Claimants to Investigate and Defend Against the Charges ...................................13

      B.    The Affidavit May Not Supply the Requisite Particularity Because It Is Not
            Properly Incorporated ..........................................................................................15

      C.    The Affidavit Provides Insufficient Basis to Support the
            Claims of the Complaint.......................................................................................19

      D.    The Indictment Does Not Compensate for the Deficiencies of the Complaint .....20

III.   THE GOVERNMENT'S CLAIM TO FORFEITURE OF THE ENTIRE
       CONDOMINIUM MUST BE DISMISSED BECAUSE IT DOES NOT
       SUPPORT A REASONABLE BELIEF THAT THE PROPERTY WAS
       "INVOLVED IN" MONEY LAUNDERING .................................................................21

       A.     The Government Does Not Indicate How The Property Is Substantially
              Connected to a Money Laundering Transaction.....................................................21

       B.     The Complaint Fails to Specify What Monetary Transaction the § 1957
              Allegations Are Based On ...................................................................................26

CONCLUSION ..............................................................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Armendariz-Mata v. DOJ*,
   82 F.3d 679 (5th Cir. 1996) ........................................................................................ 12

*Bell, Boyd, & Lloyd v. Tapy*,
   896 F.2d 1101 (7th Cir. 1990) ................................................................................... 17

*Malacara v. Garber*,
   353 F.3d 393 (5th Cir. 2003) ..................................................................................... 17

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ................................................................................................... 26

*United States v. 88 Designated Accounts*,
   740 F. Supp. 842 (S.D. Fla. 1990) ............................................................................ 17

*United States v. $49,000 Currency*,
   330 F.3d 371 (5th Cir. 2003) ............................................................................... 11, 12

*United States v. $39,000 in Canadian Currency*,
   801 F.2d 1210 (10th Cir. 1986) ........................................................................ *passim*

*United States v. $191,910.00 in United States Currency*,
   16 F.3d 1051 (9th Cir. 1994) ..................................................................................... 11

*United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No.
   58-400738-1*,
   255 F. Supp. 2d 56 (E.D.N.Y. 2003) ......................................................................... 13

*United States v. All Funds on Deposit in Great Eastern Bank Account No. 11008117*,
   804 F. Supp. 444 (E.D.N.Y. 1992) ............................................................................ 10

*United States v. All Right, Title & Interest in Real Property*,
   983 F.2d 396 (2d Cir. 1993) ...................................................................................... 11

*United States v. Allen*,
   129 F.3d 1159 (10th Cir. 1997) ................................................................................. 10

*United States v. Certain Real Property*,
   726 F. Supp. 164 (E.D. Mich. 1989) ......................................................................... 25

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991) ..................................................................................... 17

*United States v. Funds Held ex. rel. Wetterer,*
  210 F.3d 96 (2d Cir. 2000) ......................................................................................7

*United States. v. James Daniel Good Real Property,*
  510 U.S. 43 (1993) ................................................................................................26

*United States v. Leasehold Interest in 121 Nostrand Ave.,*
  760 F. Supp. 1015 (E.D.N.Y. 1991) ...............................................................25, 26

*United States v. Loe,*
  49 F. Supp. 2d 514 (E.D. Tex. 1999).......................................................9, 10, 22

*United States v. Martino,*
  681 F.2d 952 (5th Cir. 1982), *aff'd* 464 U.S. 16 (1983) ........................................6

*United States v. Melrose East Subdivision,*
  357 F.3d 493 (5th Cir. 2004) ...............................................................................11

*United States v. Mondragon,*
  313 F.3d 862 (4th Cir. 2002) .................................................................11, 12, 13

*United States v. One 56-Foot Motor Yacht Named The Tahuna,*
  702 F.2d 1276 (9th Cir. 1983) .............................................................................11

*United States v. One 1980 Rolls Royce,*
   905 F.2d 89 (5th Cir. 1990)...............................................................................9, 23

*United States v. One Parcel of Real Property,*
  921 F.2d 370 (1st Cir. 1990)................................................................................24

*United States v. Parcels of Land,*
  903 F.2d 36 (1st Cir. 1990)..................................................................................18

*United States v. Pole No. 3172,*
  852 F.2d 636 (1st Cir. 1988)..........................................................................*passim*

*United States v. Tencer,*
  107 F.3d 1120 (5th Cir. 1997) ...............................................................10, 22, 25

*United States v. Wyly,*
  193 F.3d 289 (5th Cir. 1999)..................................................................9, 22, 23

*Various Items of Personal Property v. United States,*
  282 U.S. 577 (1931) ...............................................................................................8

## STATUTES AND CONSTITUTIONAL PROVISIONS

15 U.S.C. § 78j(b)............................................................................................................2

18 U.S.C. § 981 .......................................................................................................*passim*

18 U.S.C. § 983 .......................................................................................................*passim*

18 U.S.C. § 985(c)(3) .....................................................................................................16

18 U.S.C. § 1956 ........................................................................................................9, 10

18 U.S.C. § 1957 ....................................................................................................*passim*

21 U.S.C. § 881 ..............................................................................................................24

28 U.S.C. § 1355(b)........................................................................................................16

Act of Apr. 30, 1790, 1 Stat. 117, ch. 9, § 24 .................................................................6

U.S. CONST. art. III, § 3, cl. 2 ...........................................................................................6

## ADDITIONAL AUTHORITIES

146 CONG. REC. H2040-01 (daily ed. Apr. 11, 2000) ...................................7, 22, 25, 26

*George C. Pratt & William B. Peterson, Civil Forfeiture in the Second Circuit,*
    65 ST. JOHN'S L. REV. 653 (1991) ..............................................................................6

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE §
    1183 (3d ed. 2001).....................................................................................................15

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Case No. H-06-3335** |
| **2121 KIRBY DRIVE, UNIT 33,** | § | |
| **HOUSTON, TX.,** | § | |
| | § | |
| **ASSETS OF KLL & LPL** | § | |
| **INVESTMENTS, LTD.,** | § | |
| | § | |
| **$22,680 in BANK OF AMERICA** | § | |
| **ACCOUNT NO. 0026-6253-0707** | § | |
| | § | |
| **Defendants.** | § | |

## MOTION TO DISMISS COMPLAINT

Linda P. Lay, claimant to the defendant properties in her individual capacity and as the managing general partner of KLL & LPL Investments, Ltd., by and through undersigned counsel, respectfully moves the Court for an Order dismissing the government's complaint, or, in the alternative, dismissing the claim to forfeiture of more than $2,502,230 of the value of the property located at 2121 Kirby Drive, Unit 33, Houston, Texas, ("Kirby Property") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and failure to meet the particularity requirement of Supplemental Rules G(2)(f) and E(2)(a).

1

## BACKGROUND

### The Complaint

The government's verified complaint for forfeiture in rem ("Complaint") seeks forfeiture of the Kirby Property; the assets of KLL & LPL Investments, Ltd., a family investment vehicle of which Linda P. Lay is the managing general partner ("Investment Partnership"); and $22,680 in Bank of America Account No. 0026-6253-0707.[1] While the Complaint charges that *portions* of all three properties are forfeitable because they are traceable to the proceeds of unlawful activity, (Compl. ¶¶ 6B, 7, 8), the Kirby Property is additionally alleged to be forfeitable *in its entirety* as somehow involved in an unspecified money laundering offense. *Id.* ¶ 6A.

The Complaint relies, in part, on 18 U.S.C. § 981(a)(1)(C), which authorizes civil forfeiture if the government can trace illegal proceeds, and seeks $2,502,320 of the value of the Kirby Property, $10,170,149 of the assets of the Investment Partnership, and $22,680.14 of the funds in the Bank Account as:

> subject to forfeiture because [they] constitute[] proceeds obtained, directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, namely fraud in the sale of securities in violation of 15 U.S.C. §§ 78j(b) and 78ff, wire fraud in violation of 18 U.S.C. § 1343, and conspiracy to commit securities fraud under 18 U.S.C. § 371, or property traceable thereto.

Compl. ¶ 6B. *Cf. id.* ¶¶ 7, 8.

The Complaint then alleges, in conclusory fashion, that, under 18 U.S.C. § 981(a)(1)(A), the *entire* Kirby property is forfeitable as "involved in" a violation of the money laundering statute, 18 U.S.C. § 1957. Under 18 U.S.C. § 983(c)(3), involvement in money laundering must be demonstrated by the property's "substantial connection" to a money laundering transaction.

---

[1] Mrs. Lay is the widow of recently-deceased Kenneth L. Lay. Under Texas law, her interest in these properties was transferred to her upon his death. Mrs. Lay now owns the entire communal interest in these properties.

Thus, to succeed in their claim for forfeiture of the entire condominium, the government must demonstrate that the residence was substantially connected to a specifically pled 18 U.S.C. § 1957 violation.

The Complaint however, does not allege that the Kirby Property, has any connection to any alleged money laundering, much less the substantial connection required by the statute:

> The [Kirby Property] constitutes property involved in money laundering offenses, namely a transaction or transactions, or attempted transactions, of proceeds derived from specified unlawful activity in excess of $10,000, or property traceable to such property involved in money laundering violations and is thus liable to condemnation and forfeiture to the United States for its use, in accordance with 18 U.S.C. § 981(a)(1)(A).

Compl. ¶ 6A. The remainder of the Complaint does not reveal any additional particularity regarding the alleged money laundering violation or the connection of the Kirby Property to a violation of 18 U.S.C. § 1957. *Id.* ¶ 4.

### The Affidavit

The Complaint purports to incorporate a 26-page affidavit of F.B.I. Special Agent Chad Nunez ("Affidavit"). *Id.* ¶ 9. Far from providing the detailed support necessary to save the Complaint from procedural default, the Affidavit muddies the waters with facts unattributed to any claim, allegations that supplant those of the Complaint, and no statement of the basis for the Affidavit's ability to verify facts, beyond a terse reference to Agent Nunez's participation in an investigation into "the financial collapse" of Enron. Aff. ¶ 1.

The Complaint does not reference relevant passages or otherwise identify how the facts discussed at length in the Affidavit tie in with the allegations of the Complaint. Thus, although the Affidavit devotes six pages to tracing the proceeds of the alleged crimes, there is no mention of the Kirby Property's substantial connections to money laundering, and no identification of the relevant money laundering transaction. *Id.* ¶¶ 46-66.

3

Although the Affidavit does not supply the *factual* particularity required in the Complaint, it does attempt to supply additional *charges* not included in the Complaint. Buried in what is otherwise a restatement of the allegations of the Complaint, Agent Nunez makes a new legal claim that the Investment Partnership is also subject to forfeiture as a whole under 18 U.S.C. § 981(a)(1)(A). *Id.* ¶ 3. This is contrary to the allegations contained in the Complaint, which claimed only $10,170,149 of the assets of the Investment Partnership were forfeitable under § 981 (a)(1)(C).

## The Indictment

Agent Nunez's Affidavit states that an Indictment "contained herein as Attachment A to the Complaint, set forth probable cause to believe that . . . Kenneth L. Lay ("Lay") committed, "conspiracy, wire and securities fraud." Aff. ¶ 2. The Indictment, however, was *not* attached to the Complaint served by the Government, nor is it included in the publicly available electronic docket.

Even if the Indictment had been properly attached, it is not incorporated or referenced in any way in the Complaint, and can not provide to claimant the required particularity since there is no effort to link specific passages of the Indictment to the allegations in the Complaint. Most importantly, the Indictment of Mr. Lay cannot be relied upon because it has no continuing legal significance. The District Court abated the prosecution of Mr. Lay following his death, and dismissed the Indictment.

If Mr. Lay's now-dismissed, 68-page Indictment is somehow included, the government's pleading totals 103 pages, and is devoid of any organization that links the Indictment to allegations in the Complaint. Neither the Complaint nor the Affidavit references relevant passages in the Indictment. The Complaint and Affidavit fail to allege money laundering and the

Kirby Property's substantial connection to money laundering with particularity, and the Indictment does nothing to compensate for these shortcomings because Mr. Lay was never charged with money laundering.

**The Fifth Circuit's Abatement Order**

On the morning of July 5, 2006, before he had an opportunity to appeal his conviction, Mr. Lay died of natural causes. Applying the doctrine of abatement, the District Court reversed Mr. Lay's conviction and dismissed the Indictment. In their affirmance of the District Court, the Fifth Circuit held:

> It is axiomatic that application of abatement following the death of a convicted defendant under circumstances such as those present here has the legal effect of expunging the entire proceedings as though none had ever occurred—not the indictment; not the trial; not the verdict.

Order Denying the Petition for Writ of Mandamus at 2 ("Abatement Order").

After asserting his reliance upon the Indictment, Agent Nunez mentions Mr. Lay's criminal conviction and death, but neglects to inform the Court of the Abatement Order which effectively eliminated the Indictment and the conviction. Aff. ¶ 2. Agent Nunez's assertion is hard to square with the clear language of the Fifth Circuit to the effect that "Lay has no longer been convicted," (Abatement Order at 3), and that the Indictment, along with the conviction, are to be treated as though they never occurred. *Id.* at 2.

**Verified Claim of Linda P. Lay**

Linda P. Lay, widow of Kenneth L. Lay, filed a Verified Claim and Statement of Interest ("Verified Claim") on April 16, 2007, stating her right as owner of the Kirby Property and the Bank Account, and as managing general partner of the Investment Partnership, to defend against their forfeiture.

5

## ARGUMENT

I.    **A FORFEITURE COMPLAINT MUST GIVE ADEQUATE NOTICE TO CLAIMANTS AND SUPPORT A REASONABLE BELIEF THAT FORFEITURE CAN BE PROVEN BY A PREPONDERANCE OF THE EVIDENCE AT TRIAL.**

A.    **Recent Amendments to the Civil Forfeiture Statute and Procedural Rules**

The rules governing the required specificity of civil forfeiture complaints were recently amended to reflect growing concern that, left unchecked, the government may run roughshod over the constitutional rights of claimants by seeking forfeiture of innocent properties without regard to their connection to the underlying offense.  These amendments to civil forfeiture statutes and procedural rules reflect Congress' and the Judiciary's intention to ensure that innocent individuals do not bear the consequences of others' criminal offenses without clear evidence of guilt or "taint" of the property.

Civil forfeiture is a harsh remedy.  Because forfeiture has the potential to deny innocent owners of their right to own property free from governmental interference, courts have historically viewed forfeitures warily.  "Just as nature abhors a vacuum, historically our society has abhorred forfeitures."  *United States v. Martino*, 681 F.2d 952, 962 (5th Cir. 1982) (en banc) (Politz, J., in dissent), *aff'd* 464 U.S. 16 (1983).  Criminal forfeiture was repudiated by the framers in the Constitution, U.S. CONST. art. III, § 3, cl. 2 ("[N]o . . . Forfeiture except during the Life of the Person attainted"), and by the first Congress, which enacted a provision barring the forfeiture of estate upon conviction.  Act of Apr. 30, 1790, 1 Stat. 117, ch. 9, § 24 (codified in 18 U.S.C. § 3563).

The legal fiction that it is the property itself, and not the owner, that is guilty of wrongdoing distinguishes civil from criminal forfeiture.  *See Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931); George C. Pratt & William B. Peterson, *Civil*

6

*Forfeiture in the Second Circuit*, 65 ST. JOHN'S L. REV. 653, 653-57 (1991). In civil forfeiture actions, the property is the defendant, *in rem* jurisdiction suffices, and claimants are not entitled to all of the procedural protections afforded criminal defendants. Courts have noted the danger that innocent owners may be punished for the criminal conduct of others without a criminal trial, and without clear evidence of the property's involvement in the crime. *See United States v. $39,000 in Canadian Currency*, 801 F.2d 1210, 1219 (10th Cir. 1986) (the government "opted for civil proceedings[] with relatively lax procedural protections, thereby circumventing the more stringent requirements of criminal forfeiture.").

In 2000, Congress passed the Comprehensive Asset Forfeiture Reform Act (CAFRA), designed to make forfeiture laws conform to congressional intent that forfeiture should not deprive innocent owners of property. As Senator Leahy explained, the passage of CAFRA was designed to:

> temper 'prosecutorial zeal' which 'skirts the boundaries of due process, leading to the taking of private property regardless of whether the owner is innocent of, or even cognizant of, the property's use in an illegal act, or whether the seizure is entirely out of proportion to the criminal conduct alleged.

*United States v. Funds Held ex. rel. Wetterer*, 210 F.3d 96, 110 (2d Cir. 2000) (quoting 146 CONG. REC. S1753-02 (daily ed. Mar. 27, 2000)). CAFRA introduced two fundamental changes: it shifted and raised the burden of proof from the owner to the government, and changed the standard of proof from probable cause to a preponderance of the evidence. 18 U.S.C. § 983(c)(1). It also required that forfeiture of property be based on a substantial, rather than incidental, connection to criminal wrongdoing. 146 CONG. REC. H2040-01 (daily ed. Apr. 11, 2000) (statement of Rep. Hyde).

Consistent with these statutory changes, the Rules Advisory Committee introduced changes to the procedural rules governing civil forfeiture. Rule G, Advisory Committee Notes,

(noting application of Rule G to actions governed by CAFRA and incorporation of specific CAFRA provisions). Since one of the risks posed by civil forfeiture is that the property seized will belong to parties who have no knowledge of the underlying criminal wrongdoing, civil forfeiture complaints have always been required to deliver a higher degree of notice than regular civil pleadings. Thus, a complaint for civil forfeiture is required to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Rule E(2)(a). New Supplemental Rule G, which took effect on December 1, 2006, assigns a still greater burden on the government, and, reflecting the heightened burden of proof imposed by CAFRA, mandates additionally that the complaint "identify the statute under which forfeiture is brought" and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G(2)(e) & (f).

### B.    Post-CAFRA, the Government Must Prove the Guilt of the Property Subject to Forfeiture by Demonstrating By a Preponderance of the Evidence Either a Substantial Connection to Money Laundering, or that the Full Value Sought is Traceable to the Predicate Offense.

#### 1.    Forfeiture is contingent upon the government's ability to prove that property is "tainted" by its involvement in crime.

Under 18 U.S.C. § 981, property is subject to forfeiture under two different theories of "guilt": either as the proceeds of illegal activity under § 981(a)(1)(C), or as property "involved in" money laundering under § 981(a)(1)(A). Under either theory, property is subject to forfeiture only to the degree it is "tainted" by the illegal activity.

Under the proceeds theory, the government seeks forfeiture of $2,502,320 of the value of the Kirby Property, $10,170,149 of the assets of the Investment Partnership, and $22,680.14 of the funds in the Bank Account. This theory requires strict proof that the asset, up to the value

8

sought for forfeiture, was acquired with the proceeds of one of the three specified unlawful activities – the predicate offenses – alleged. *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir. 1999); *United States v. One 1980 Rolls Royce*, 905 F.2d 89, 90 (5th Cir. 1990). If the funds are commingled with untainted funds, the property is forfeitable only in proportion to the amount of tainted funds contributed to its purchase. *United States v. Loe*, 49 F. Supp. 2d 514, 521-522 (E.D. Tex. 1999); *United States v. Pole No. 3172*, 852 F.2d 636, 639 (1st Cir. 1988) ("After all, only the actual proceeds of [the illegal activity] are forfeitable."). Thus, to succeed in the forfeiture of an entire parcel of real property, such as the Kirby Property, under a proceeds theory, the government must show that the property was purchased entirely with tainted funds.

Under the "involved in" theory of 18 U.S.C. § 981(a)(1)(A), a property's involvement in money laundering permits forfeiture of the entire property. Because it permits the government to avoid proof of tracing, forfeiture of an entire property under an "involved in" theory requires a strong showing of the property's involvement in money laundering. Thus, if the government's theory of forfeiture is that the property was used to "*commit* or *facilitate* . . . or was *involved in* the commission of a criminal offense, the Government shall establish that there was a *substantial connection* between the property and the offense." 18 U.S.C. § 983(c)(3) (emphasis added).

In order to meet its burden of pleading that the Kirby Property is "involved in" money laundering, the government must first adequately plead the elements of the offense that forms the basis for forfeiture, 18 U.S.C. § 1957. *Id.* § 981(a)(1)(A); Compl. ¶ 4. Section 1957 makes it illegal to knowingly engage in a "monetary transaction" of over $10,000 in the proceeds of specified unlawful activity. 18 U.S.C. § 1957. Unlike its counterpart at 18 U.S.C. § 1956, there is no requirement in § 1957 that the transaction be designed to conceal or disguise the illegal activity.

9

Because § 1957, unlike § 1956, requires no proof of an intent to conceal or disguise, the involvement of the property in the monetary transaction cannot be assumed. *See United States v. Allen*, 129 F.3d 1159, 1165 (10th Cir. 1997) (noting that this statute "applies to the most open, above-board transaction") (internal citation omitted). Unlike property that becomes tainted by making the offense easier to commit or harder to detect, untainted property merely present at the scene of the crime is not subject to forfeiture. *United States v. All Funds on Deposit in Great Eastern Bank Account No. 11008117*, 804 F. Supp. 444, 447 (E.D.N.Y. 1992); *see also United States v. Tencer*, 107 F.3d 1120, 1135-36 (5th Cir. 1997) ("[M]erely pooling tainted and untainted funds in an account, does not, without more, render that account subject to forfeiture."). Evidence of a substantial connection to the § 1957 transaction takes on a more important role in such cases because it is not obvious how property purchased with untainted funds can be said to be involved in an offense that has no conceal or disguise element – an offense which instead involves only the deposit, withdrawal, or expenditure of tainted funds. *See Loe*, 49 F. Supp. 2d at 519 (emphasizing the need for the government to prove a "substantial nexus" between the property and the offense in a § 1957 case).

To prove that $2,502,320 of the value of the Kirby Property, $10,170,149 of the assets of the Investment Partnership, and $22,680.14 of the funds in the Bank Account are forfeitable under § 981(a)(1)(C), the government must carefully trace that much of the value of each property to the proceeds of one of three predicate offenses and then prove each element of the predicate offense. To claim the entire Kirby Property as forfeit, the government must show the Kirby Property's substantial connection to a § 1957 transaction, or demonstrate that the full value of the property derived from the proceeds of specified unlawful activity.

2.    The government must prove each element of civil forfeiture
by a preponderance of the evidence.

Prior to CAFRA, the claimant, and not the government, bore the burden of proof of showing, by a preponderance of the evidence that the property was "innocent" or otherwise not subject to forfeiture. *United States v. Melrose East Subdivision*, 357 F.3d 493, 501 (5th Cir. 2004); *United States v. All Right, Title & Interest in Real Property*, 983 F.2d 396, 403 (2d Cir. 1993). In their complaint, the government needed only to make a preliminary showing of probable cause – no more strict "proof" of the property's guilt than an indictment is proof of a criminal defendant's guilt. *See United States v. One 56-Foot Motor Yacht Named The Tahuna*, 702 F.2d 1276, 1282-83 (9th Cir. 1983). Property could be, and frequently was, forfeit without need for the government to put forth any actual proof. *See United States v. $191,910.00 in United States Currency*, 16 F.3d 1051, 1069 (9th Cir. 1994) (finding that the disparity between government's and claimant's burdens "involves a serious risk that an innocent person will be deprived of his property").

In response to the harshness of this burden, since the enactment of CAFRA in 2000, property is presumed innocent until the government proves it guilty by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). The government's obligations with regard to the complaint have likewise changed, since a complaint must now support a reasonable belief that the government will be able to prove forfeiture *by a preponderance of the evidence*, as opposed to by probable cause. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003) (citing *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002).

11

**C.    The Government Must Strictly Adhere to Procedural Rules Requiring Particularity in the Complaint Sufficient to Ensure that Claimants Can Develop a Defense and To Support a Reasonable Belief that the Government Will Be Able to Meet Its Burden of Proof At Trial.**

Since forfeitures are not favored, they should be enforced only when they fall within both the letter and spirit of the law. *Armendariz-Mata v. DOJ*, 82 F.3d 679, 683 (5th Cir. 1996) (citing *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939)). ("Where the government seeks the traditionally disfavored remedy of forfeiture, due process protections ought to be diligently enforced, and by no means relaxed."); *Pole No. 3172*, 852 F.2d at 638 ("The peculiar stringency of the particularity requirement in these cases is based on a concern for due process which arises by reason of the 'drastic nature' of these remedies.").

Reflecting the seriousness of the remedy, the rules governing the pleading of civil forfeiture demand a level of particularity that goes well beyond the usual requirements of notice pleading in Rule 8(a) of the Federal Rules of Civil Procedure. *$49,000 Currency*, 330 F.3d at 376 n.8.; *$39,000 in Canadian Currency*, 801 F.2d at 1218 ("The drastic nature of . . . forfeiture remedies requires heightened protections not present in general civil practice."). The complaint in an action for civil forfeiture must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G(2)(f). This imposes a substantive pleading requirement such that the "Government must do *more than simply provide greater detail* than it otherwise would be required to do under Rule 8 of the Federal Rules of Civil Procedure." *$49,000 Currency*, 330 F.3d at 376 n.8.

Particularity in civil forfeiture complaints serves a dual purpose: assuring the court that there is a well-reasoned basis for seeking such a drastic remedy, and alerting innocent claimants to the property of the substance of the allegations. *Mondragon*, 313 F.3d 862, 865 (requiring that the "complaint sufficiently notify the defendant of the incident in dispute and afford a reasonable

belief that the claim has merit").  Therefore, the government's burden at the pleading stage is not only to prove that they have a prosecutable case, but also to provide enough information to allow claimants –who often were not involved in the underlying offense – "to commence an investigation of the facts and to frame a responsive pleading."  Rule E(2)(a).  Facts must be specific enough for the claimant to understand the government's theory.  *United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1*, 255 F. Supp. 2d 56, 69 n.19 (E.D.N.Y. 2003).  The claimant should be able to respond to a complaint for civil forfeiture without further procedural maneuvering.  *$39,000 in Canadian Currency*, 801 F.2d at 1216.  Failure to meet this standard requires dismissal of the complaint.  *Pole No. 3172*, 852 F.2d at 638.

## II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS  TO  MEET THE PARTICULARITY REQUIREMENTS OF SUPPLEMENTAL RULES G(2)(f) AND E(2)(a).

### A.    The Complaint Does Not Support a Reasonable Belief that the Government Can Prove Forfeiture by a Preponderance of the Evidence or Enable Claimants to Investigate and Defend Against the Charges.

Where, as here, the Complaint does no more than echo the statutory authorization of civil forfeiture, it does not provide claimants with any more notice than might have been elicited from the statute itself, and provides no assurance that the government is reasonably prepared to meet its burden at trial.

Supplemental Rules G(2)(f) and E(2)(a) require that the complaint must allege both the essential elements of the offense and the facts that are the basis for the allegations.  *See United States v. Mondragon.*  313 F.3d 862, 865 (4th Cir. 2002); *$39,000 in Canadian Currency*, 801 F.2d at 1217 (Where "[i]t is the Government that is attempting to deprive a person of property . . . [i]t is therefore the Government's burden to satisfy the initial pleading requirements by

specifically alleging the circumstances underlying the claim."); *Pole No. 3172,* 852 F.2d at 641 (the district court "must insist on knowing the factual grounds of the government's claim" at the pleadings stage).

The government must also allege and provide factual support to show that it will be able to prove the existence of the underlying offense, trace the properties sought for forfeiture to the proceeds from the underlying offense, and in the case of the claims under § 981(a)(1)(A), demonstrate the property's substantial connection to the money laundering.  Where the government merely parrots the language of the statute in stating that the property is forfeitable, the complaint must be dismissed.  This was the grounds for dismissing the complaint in *Pole No. 3172*, which alleged only that defendant real property was a proceed traceable to an exchange of controlled substances.  The First Circuit deplored the government's pleading as so conclusory that it "in effect, provided no facts whatsoever to support its claim." 852 F.2d at 638-39.

Unlike the complaint found faulty in *Pole No. 3172*, the government's Complaint here does not even completely allege *the offense*, much less the *factual basis* for their claims.  The government's Complaint concludes that defendant properties are subject to forfeiture in less than two-and-a-half pages.  Although the Complaint alleges the existence of underlying offenses, the traceability of the proceeds, and the existence of a money laundering transaction, the "substantial connection" element of § 981(a)(1)(A) – the centerpiece of Congress' civil forfeiture reform – is notably absent.

Given that it was unable to include all the elements of their claim in the Complaint, it is hardly surprising that the government has likewise fallen short of its burden to provide the necessary factual basis for the allegations.  Claimants in a civil forfeiture action cannot be presumed to know the facts of the underlying offense.  *Id.* at 640 (rejecting a rule that would

14

require district courts to evaluate the knowledge of the claimants in determining the sufficiency of a forfeiture complaint). Claimants in this case are entitled to learn from the Complaint the offense that generated illegal proceeds, a detailed account of how those proceeds have been traced to defendant properties, a description of the monetary transaction that is the heart of the § 1957 charge, and in what way the condominium furthered that monetary transaction. The relevant passages of the Complaint, however, set forth in full above, are silent as to the facts that gave rise to the allegations.

### B.    The Affidavit May Not Supply the Requisite Particularity Because It Is Not Properly Incorporated.

In the past, the factual basis for allegations of the complaint could be supplemented in an affidavit, but the ability to use an affidavit to satisfy the terms of Supplemental Rules G(2)(f) and E(2)(a) is no longer clear. Where, as here, the affidavit is long and the association with the allegations of the complaint unclear, and there are discrepancies between the affidavit and the complaint, the incorporation of the affidavit provides only the semblance of notice, and the affidavit must be disregarded in favor of assessing the complaint on its own merits.

A complaint is required by statute for initiation of a civil forfeiture action. *See* 18 U.S.C. § 983(a)(3)(B). The Supplemental Rules supply the minimum criteria for the complaint, and contemplate that the requisite particularity will come from the complaint, and not some attachment or other document. Rule G(2)(e) & (f). Because they are not considered pleadings, the use of an affidavit does not relieve a party of his or her obligation to plead under the rules. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1183 (3d ed. 2001).

The practice of attaching affidavits is a holdover from the days when property was seized by issuance of a probable cause warrant in order to establish *in rem* jurisdiction. To ensure that

property was properly seized, Rule C required magistrates to review the complaint and the "supporting papers," referring to the warrant, for probable cause. Rule C(3)(a)(i). Since 1986, however, civil forfeiture law has departed from admiralty in permitting jurisdiction to be based upon the location of the commission of the underlying offense. 18 U.S.C. § 981(h) (permitting civil forfeiture to be brought in the district where the criminal prosecution is pending); 28 U.S.C. § 1355(b) (extending jurisdiction in 1992 to any district where the act giving rise to forfeiture occurred); *see also* Rule C, Advisory Committee Notes (noting changes to civil forfeiture laws allowing courts to exercise authority over property outside the district). With the passage CAFRA, *in rem* jurisdiction has further evolved such that, for forfeiture of real property, an arrest warrant *in rem* is no longer necessary at all. 18 U.S.C. § 985(c)(3) (posting of notice on property will suffice); Rule C, Advisory Committee Notes ("[R]eal property that is the subject of forfeiture action is not to be seized until an order of forfeiture is entered.").

In 2006, the Supplemental Rules were re-organized to separate admiralty from forfeiture rules. *See* Report of the Civil Rules Advisory Committee, 73 (May 17, 2004) (separating civil forfeiture procedures under Rule G so that "the distinctive needs of forfeiture [do not] distort the interpretation of common provisions in ways that interfere with best admiralty practice, or vice versa"). As part of this segregation, the Advisory Committee noted that Rule C(3)(a)(i)'s review of the complaint and "supporting papers" was no longer appropriate to civil forfeiture actions after CAFRA. *See* Rule C, Advisory Committee Notes (explaining that, since § 985 was enacted by CAFRA, "[t]he summons and arrest procedure is no longer appropriate"). The consolidation of relevant information in the complaint under the new rules facilitates notice by eliminating the need to consult other documents to deduce the allegations and by forcing the government to provide a single, internally coherent statement of the claims.

The government attempts to avoid its obligation to present a single, internally clear statement of the claims in its Complaint by "incorporating" the terms of Special Agent Nunez's 26-page affidavit and by attempting to incorporate the dismissed Indictment as a tertiary source. Although the government suggests that the Affidavit supplies the "evidence" of the allegations of the Complaint, it is the Complaint itself that must meet the minimum pleading requirements of Rule G(2)(f).  To permit supplementation from an attachment is contrary to the clear edict of Rule G(2)(f), which mandates that a minimum level of specificity be included in *the complaint*. *See United States v. 88 Designated Accounts*, 740 F. Supp. 842, 847 n.2 (S.D. Fla. 1990) (chastising the government's pleadings, in part because "[i]t was necessary for the Court to refer to affidavits and other documents outside the complaint for any detailed understanding of the case").

Since the primary function of a complaint is notice, if affidavits are to be permitted, they must present the facts so that their correlation to the claims in the complaint is clear.  It is not the job of the court or the claimant to rifle through voluminous pleadings. *Cf. Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal quotation omitted); *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990) (affirming that it is not the burden of the court to "winnow the wheat from the chaff"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Claimants should have no higher burden than the court to ferret out the facts.

The rules governing procedure for civil forfeiture actions are carefully crafted to balance the flow of information between claimants and the government.  While the government may

17

demand specific responses to interrogatories to test the authenticity of claimants' ownership, the right of claimants to receive facts reasonably tailored to the arguments of the case is guarded by the specificity requirements of Rules G(2)(f) and E(2)(a). *Compare* Rule G(6) (creating procedure for limited pre-trial interrogatories by the government) *with* Rule G(2) (listing information claimants are entitled to discover in the complaint).

Further aggravating this problem are discrepancies between the Affidavit and the Complaint that make it impossible to read the two in harmony. Although the Complaint alleges forfeiture of the Investment Partnership under § 981(a)(1)(C), in the Affidavit, Agent Nunez alleges "probable cause to believe that the defendant investment partnership property was *involved in* money laundering in violation of 18 U.S.C. § 1957, and is therefore subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A)." Aff. ¶ 3. This claim is unique to the Affidavit, and contradicts the allegations of the Complaint, which makes no claim under 18 U.S.C. § 981(a)(1)(A), and which limit forfeiture of the partnership assets to $10,170,149.[2] Compl. ¶ 7.

While some courts have, pre-CAFRA, permitted the incorporation of affidavits in pleadings to provide factual support for the claims alleged in the complaint, this informal approach has never been taken so far as to permit the use of affidavits to bypass the complaint entirely *and allege the claims themselves. See United States v. Parcels of Land*, 903 F.2d 36, 48 (1st Cir. 1990) (judging as irrelevant the question of whether the *facts* were contained in the complaint itself or in the attached affidavit). The complaint, and not an attached affidavit, must set forth the legal theories. Affidavits are only intended to provide a sworn statement of facts. Requiring that the claims be set forth in the complaint, therefore, is not "merely a procedural

---

[2] The Affidavit also suggests that the property is implicated by mail fraud, but only wire fraud was alleged in the Complaint. *See* Aff. ¶¶ 2, 7 (describing the experience of the affiant and the use of the mails). To the extent that the government purports to rely upon this claim, they should be precluded by their failure to include the allegation in the Complaint, for reasons analogous to those above.

technicality," but a way of ensuring that the government satisfies its due process obligation to provide notice of the charges. *Pole No. 3172*, 852 F.2d at 638 (noting that the requirement of particularity is not merely a procedural technicality).  Because the allegation that the Investment Partnership is subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) is not included in the Complaint, it is not sufficiently pled.

The use of an affidavit to satisfy the particularity requirement of the Supplemental Rules is outdated and no longer in harmony with the Rules.  Where courts permit the attachment of factual supplements, attachments that detract from the complaint's ability to provide adequate notice should not be tolerated.  The attachment in this case of voluminous pleadings that do not specifically correlate to the Complaint, and which, in places, directly contradict the Complaint, cannot support the claimant's need to formulate a defense or the obligation of this court to assess the evidentiary basis for the claims.  As such, the Complaint must be assessed on its own merits and, failing to meet the particularity requirements, should be dismissed.

**C.    The Affidavit Provides Insufficient Basis to Support the Claims of the Complaint.**

The Affidavit in this case exacerbates the deficiencies of the Complaint.  The Complaint is devoid of factual support and does not even *allege* the Kirby Property's substantial connection to money laundering – the central component of forfeiture under § 981(a)(1)(A).  *See supra* Section II.A.  Although the Affidavit includes many facts – and, indeed, additional claims – it is difficult, if not impossible, to patch them together into a coherent view of the case.  Nor does the Affidavit allege or provide factual support for the missing elements of the government's claims. Nowhere does the Affidavit treat the Kirby Property's substantial connection to a § 1957 money laundering transaction, or even identify which of many financial transactions listed formed the

basis for the allegation. *See infra* Section III. If anything, the new claims and extraneous facts in the Affidavit obscure the claims of the Complaint. *See supra* Section II.B and note 5.

Not only does the Affidavit fail to shoulder the demands of the Complaint, it does not even measure up to the standards imposed upon affidavits more generally. While the allegations of the civil forfeiture complaint may be based on inadmissible evidence, they must be attributed, and the evidence must still be found to be reliable. *Pole No. 3172*, 852 F.2d at 639 (finding that affidavit did not satisfy due process because it was "riddled with hearsay on virtually all its constitutive assertions"). The minimum indicia of reliability are personal knowledge and a statement of basis for the affiant's knowledge of the facts. Agent Nunez, however, supplies no detail as to how he came to have personal knowledge of the financial dealings of Kenneth L. Lay, instead attributing the 26-pages of facts submitted to his participation in "an investigation . . . . into Enron." Aff. ¶ 1.

### D.      The Indictment Does Not Compensate for the Deficiencies of the Complaint

Although the Indictment is listed in the Affidavit as Attachment A, the government has failed to attach it to the pleadings. Attachments not included with the pleadings may not form the basis for adequate notice, even though claimants may be aware of the existence of the attached document. *Pole No. 3172*, 852 F.2d at 640 (rejecting a "rule that would require district courts generally to look at the knowledge of the claimants in determining the sufficiency of a forfeiture complaint").

Second, the Indictment is a legal nullity. The Fifth Circuit held that it was "axiomatic that the application of abatement . . . has the legal effect of expunging the entire proceedings as though none had ever occurred – *not the indictment; not the trial; not the verdict*." Abatement

Order at 2 (emphasis added). Pursuant to this Order,[3] the government may not rely upon facts alleged in the expunged Indictment to provide support for the charges made in the Complaint or the Affidavit. Agent Nunez's Affidavit not only inappropriately relies upon the Indictment, it also misstates the effect of the Order that "Lay has no longer been convicted" by implying that the conviction stands. Aff. ¶ 2. The inference the government appears eager to impress upon the court is that success in a former prosecution, even if only tangentially related and untested by appeal, relieves it of its burden to plead the elements of the present civil forfeiture action. Because the criminal proceedings against Kenneth Lay could not be appealed before his death, the law must treat them as if they never existed.

Finally, even if Mr. Lay's now-dismissed 43-page Indictment is somehow included, it only provides facts that relate to the underlying offenses of wire fraud, fraud in the sale of securities and conspiracy. One of the shortcomings of the Complaint and Affidavit, however, is their failure to allege and provide factual basis for the Kirby Property's substantial connection to money laundering and to specifically identify the related money laundering transaction. The Indictment does nothing to compensate for these shortcomings.

## III. THE GOVERNMENT'S CLAIM TO FORFEITURE OF THE ENTIRE CONDOMINIUM MUST BE DISMISSED BECAUSE IT DOES NOT SUPPORT A REASONABLE BELIEF THAT THE PROPERTY WAS "INVOLVED IN" MONEY LAUNDERING.

### A. The Government Does Not Indicate How The Property Is Substantially Connected to a Money Laundering Transaction

By insisting that property bear a substantial connection to illegal activity in order to be forfeitable in its entirety as involved in crime, Congress intended to create a higher hurdle to forfeiture under § 981(a)(1)(A), one "significantly greater than just 'incidental or fortuitous.'"

---

[3] In their Abatement Order, the Fifth Circuit denied a petition for a writ of mandamus under the Crime Victims' Rights Act that sought to overturn the district court's ruling vacating Mr. Lay's conviction and dismissing the Indictment following his death. The Supreme Court denied a petition for certiorari on April 16, 2007.

146 CONG. REC. H2040-01 (statement of Rep. Hyde) (critiquing the different approaches of the circuits). This standard is of particular importance where the property sought is a home, or where forfeiture is based on an alleged violation of 18 U.S.C. § 1957. *Id* at H2050. (noting that "[a]n especially high standard should have to be met before we dispossess a person or family of their home"); *id*. (explaining that the mere association with tainted funds does not render property subject to forfeiture without some element of intent to conceal or disguise).

Prior to CAFRA, courts applied a broader "nexus" requirement to describe the requisite relationship between the property and the offense under an "involved in" or facilitation theory. *Wyly*, 193 F.3d at 302. "Facilitating property" was defined by the Fifth Circuit as that making "the prohibited conduct less difficult or more or less free from obstruction or hindrance." *Tencer*, 107 F.3d at 1134.

While the "nexus" standard enunciated by the Fifth Circuit was less stringent than that now supplied by CAFRA, its evolved application came close to the CAFRA standard. In *Wyly*, 193 F.3d 289, the court upheld the forfeiture of a correctional facility in which the defendant, a local sheriff, was alleged to have an improper ownership interest from which he received distributions. As the *source* of the proceeds of the illegal venture, the Court held that the facility had a "substantial nexus" to the offense because it was indispensable to the money laundering conspiracy. *Id*. at 302. This precedent was clarified in *Loe*, where the Eastern District of Texas held that the requisite "nexus" was that between the money laundering offense and the interest in real property sought for forfeiture. 49 F. Supp. 2d at 520. Because the government in that case had only demonstrated a nexus between money laundering and the bank accounts through which the money had been laundered, the court refused to grant forfeiture of defendant's valuable lease rights. Just like any other asset, the lease rights, which pre-dated the money laundering, could

not be subject to forfeiture without evidence that they were involved in the money laundering. *Id.*

Despite the clear language of CAFRA, the government's pleadings include no evidence that the Kirby Property was involved in a § 1957 monetary transaction. The Complaint does not even *allege* the substantial connection demanded by § 983(c)(3), and both the Complaint and the Affidavit fail to demonstrate adequate facts to support such a connection. The facts alleged in the Complaint and Affidavit neither indicate nor suggest any intention on the part of Kenneth Lay to purchase the condominium for purposes of concealing, or disguising, or in any way facilitating an alleged money-laundering transaction. The condominium was purchased before the allegedly tainted deposits were made, and Mr. Lay and his wife lived there. At most, the Affidavit makes out a claim that Kenneth Lay used potentially commingled funds to make a mortgage payment of $2,502,320 – facts which would tend to support the conclusion that the government is entitled to less than $2,502,320 of the value of the condominium, not more.[4]

The government nonetheless seeks forfeiture of the entire condominium, even though, by the terms of its own Affidavit, only $2,502,320 of the value of the condominium is traceable to alleged proceeds of illegal activity. Without so much as a citation to the new standard under § 983(c)(3), the government's Complaint seems to embrace the outdated assumption that "forfeitability spreads like a disease from one infected mortgage payment to the entire interest in the property acquired prior to the payment." *Pole No. 3172*, 852 F.2d at 639. By ignoring the essential "substantial connection" element in § 983(c)(3), the government attempts to avail itself

---

[4] Where there is evidence that tainted funds are commingled with untainted funds, the government bears the burden of showing that the existence and amount of tainted funds. *See Wyly*, 193 F.3d at 303 (because the government presented no evidence as to the amount or source of funds in the bank account when seized, the evidence was not sufficient to sustain forfeiture of the account). Only that portion of the property traceable to the proceeds of the criminal offense is subject to forfeiture. *One 1980 Rolls Royce*, 905 F.2d at 90.

of the full extent of its forfeiture powers under § 981(a)(1)(A) while making an end-run around the protections intended to limit their application in just such circumstances.

Such abuses in pleading were precisely those intended to be prevented by the requirement of particularity. "Supplemental Rule E(2)(a)['s] particularity requirement is designed to assure that the forfeiture complaint apprises potential claimants of the circumstances which support the government's contention that . . . the defendant property was *connected with* illegal . . . activity." *United States v. One Parcel of Real Property*, 921 F.2d 370, 375 (1st Cir. 1990). Where forfeiture of an entire property is sought, it is not enough that the Complaint supports a reasonable belief "that a portion of the property is traceable as proceeds from an [illegal activity]." *Id.*

The complaint and the facts were equally divergent in *Pole No. 3172*, where the First Circuit compared the government's claims to forfeiture of real property in its entirety unfavorably with the facts alleged suggesting that the property owner first became involved in illegal activity two years *after* the purchase of the property. Because "the government only ha[d] a facially valid claim to a proportion of the property equal to the percentage of principal paid on the mortgage" out of the proceeds of illegal activity, the Court was forced to dismiss the government's claims to forfeiture of property as a whole. 852 F.2d at 640. The Court found "absolutely no reason" for the government to allege forfeiture of that percentage interest in the value acquired with the original downpayment. *Id.* at 639.

A complaint similarly devoid of details as to the property's involvement in illegal activity was dismissed in *$39,000 in Canadian Currency*. 801 F.2d at 1221 Seeking civil forfeiture of a Volvo allegedly used to facilitate cocaine dealing, the government had issued a complaint roughly tracking the language of the drug forfeiture statute, 21 U.S.C. § 881, and limiting its

24

description of the Volvo's involvement with the crime to a date. *Id.* at 1215. With "[h]ow or where the car was so used, or by whom, . . . left to the imagination," the court had no choice but to dismiss the complaint. *See also United States v. Certain Real Property*, 726 F. Supp. 164, 168 (E.D. Mich. 1989) (nothing in the complaint linked the property with drug trafficking as would be necessary to meet the statutory requirement of a "nexus").

There, as here, the connection between the property and the offense must be specifically alleged because, "[n]ot every involvement of [property] with [an illegal activity] triggers forfeiture." 801 F.2d at 1221 n.10. Specificity is of particular importance where, because of the nature of the illegal activity alleged, it is otherwise impossible to distinguish the involvement of property in a criminal enterprise from the regular, everyday use of the property. This is true, for example, of a bank account alleged to be "involved in" § 1957 money laundering, where it is not inherent from the mere fact that illegal proceeds were added that the account was involved in laundering as opposed to simply receiving deposits in the normal course of business. In demanding that property bear a substantial connection to the money laundering, Congress intended to promote the understanding that "merely pooling tainted and untainted funds in an account, does not, without more, render that account subject to forfeiture." 146 CONG. REC. H2040-01 (statement Rep. Hyde) (quoting *United States v. Bornfield*, 145 F.3d 1123,1135 (10th Cir. 1998)); *see also Tencer*, 107 F.3d at 1135-36 (same).

The obligation to plead the property's substantial connection to illegal activity with particularity should be even more stringent where the property in question is real property, and the family's primary residence. *United States v. Leasehold Interest in 121 Nostrand Ave.*, 760 F. Supp. 1015, 1032 (E.D.N.Y. 1991) (suggesting that, in order to forfeit a home or apartment lease, the government should be required to prove its case by the clear and convincing evidence

standard evinced in *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).  Given the special

protected status of an individual's home under the Fourth Amendment and at common law, the

need for adequate notice to "protect the use and possession of property from arbitrary

encroachment" takes on special significance.  *United States. v. James Daniel Good Real

Property,* 510 U.S. 43, 52 (1993); *121 Nostrand Ave.*, 760 F. Supp. at 1027 ("[E]xpectation of

privacy and freedom from Government intrusion in one's home merits the additional protections

of preseizure notice and hearing.").  The "substantial connection" requirement was intended, in

part, to reign in courts which had "been much too liberal in finding facilitation" with regard to

homes.   146 CONG. REC. H2040-01 (statement of Rep. Hyde) (suggesting that many cases

forfeiting homes before CAFRA would not meet the new "substantial connection" test).

### B.    The Complaint Fails to Specify What Monetary Transaction The § 1957 Allegations Are Based On.

In its Complaint, the government charges that the condominium is forfeit because it is

involved in "a transaction or transactions, or attempted transactions, of proceeds derived from

specified unlawful activity in excess of $10,000, or property traceable to such property involved

in money laundering violations." Compl. ¶ 6A.  To forfeit untainted property under an "involved

in" theory, the government must show a substantial connection between the property as a whole

*and the money laundering offense.  See supra* Section III.B.2.  The existence of a monetary

transaction is an essential element of the government's case, and one which must be proven by a

preponderance of the evidence. *See supra* Section III.B.2.  The need for particularity in pleading

the monetary transaction is especially important where, as here, the money laundering "offense"

alleged is no more than an allegation of receiving and depositing proceeds.

The Affidavit describes at least 27 monetary transactions relating to the condominium –

nineteen payments to pay off Mr. Lay's Enron line of credit, (Aff. ¶ 48), three alleged deposits

from advances on the same line of credit, (*id.* ¶¶ 56, 57), two withdrawals, and two mortgage payments on the condominium. *Id.* ¶¶ 58, 59. The Affidavit also refers obliquely to other monetary transactions. Each of the nineteen payments on Mr. Lay's Enron line of credit is alleged to have been made possible by the antecedent sale of Enron stock back to the company, and is alleged to have been followed by immediate advances of funds on the same line of credit, bringing to sixty-six the total, number of potential monetary transactions. *Id.* ¶ 49. The Affidavit also alleges that Mr. Lay ceased making payments on his line of credit after October 2001, but continued receiving advancements until November 2001. *Id.* ¶ 50. These advances are not enumerated.

In order to commence an investigation and prepare a defense, claimants must know which of the multitudes of monetary transactions alleged in the Affidavit is being charged as the § 1957 money laundering transaction. This level of precision is necessary to refute the claim that Mr. Lay violated § 1957 by laundering criminal proceeds, and to investigate whether the Kirby Property was "involved in" that offense. In particular, claimants must be able to identify that transaction charged as money laundering in order to assess the substantial connection of the Kirby Property to the transaction, since the government has neither charged nor alleged facts sufficient to support this element.

The Complaint provides no information as to the factual basis for the allegations of money laundering except to allege that it is the cause of the civil forfeiture action. The Affidavit provides a lengthy narrative of various financial transactions made by Mr. Lay, but makes no effort to relate the descriptions to the charges. The onus is on the government to clearly identify the facts that support the charges in order to permit claimants to investigate and prepare their defense, and to assure this Court that it will be able to meet its burden at trial.

## CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint, or, in the alternative, dismiss the claim to forfeiture of more than $2,502,230 of the value of the Kirby Property.

Respectfully submitted,

**Porter & Hedges, L.L.P.**

DAVID R. JONES
Attorney-In-Charge
Texas Bar No. 00786001/S.D. Tex. No. 16082
1000 Main Street, 36th Floor
Houston, TX 77002
(713) 226-6000
(713) 228-1331 (Fax)

SAMUEL J. BUFFONE
Of Counsel
Ropes & Gray LLP
One Metro Center
700 12th Street, N.W., Suite 900
Washington, D.C. 20005
(202) 508-4657
(202) 508-4650 (Fax)
*Attorneys for Linda P. Lay*

28

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of May, 2007, a true and correct copy of the foregoing Motion to Dismiss has been delivered to the following by United States first class mail and by electronic delivery to those registered ECF users appearing in the case.

Steven A. Tyrrell (Steve.Tyrrel@usdoj.gov)
Acting Chief
DOJ Criminal Division
1400 New York Avenue, NW
Room 4100
Washington, DC 20530

Patrick T. Murphy (Patrick.Murphy@usdoj.gov)
DOJ Criminal Division
1400 New York Avenue, NW
10th Floor
Washington, DC 20530

Christine M. Whitledge (Christine.Whitledge@usdoj.gov)
U.S. Department of Justice
Asset Forfeiture and Money Laundering Section
1400 New York Avenue, NW
Suite 10100
Washington, DC 20530

David R. Jones