IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA,                §
                                         §
        Plaintiff,                       §
                                         §
v.                                       §
                                         §
2121 KIRBY DRIVE, UNIT 33,               §        CIVIL ACTION NO. H-06-3335
HOUSTON, TX.,                            §
                                         §
ASSETS OF KLL & LPL                      §
INVESTMENTS, LTD.,                       §
                                         §
$22,680 IN BANK OF AMERICA               §
ACCOUNT No. 0026-6253-0707,              §
                                         §
                                         §
        Defendants.                      §

MEMORANDUM AND ORDER

        Pending is Claimant Linda Lay's Motion to Dismiss Pursuant to

Rule 12(b)(6) (Document No. 15).  After having carefully considered

the motion, response, reply, and the applicable law, the Court

concludes that the motion should be denied.

I.  Background

        This is a civil forfeiture action instituted by the U.S.

Government against $10,170,149 of the assets of KLL & LPL

Investments, Ltd. ("Defendant Investment Partnership"); $22,680.14

in Bank of America Account Number 0026-6253-0707 ("Defendant Bank

Account"); and a residential condominium located at 2121 Kirby

Drive, Unit 33, Houston, Texas 77019 ("Defendant Real Property")

(collectively, the "Defendant Properties").  The Government alleges that the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981.

The Government's forfeiture action alleges that the Defendant Properties constitute or are derived from proceeds traceable to offenses constituting "specified unlawful activity" committed by Kenneth Lay ("Lay"), Enron Corp.'s ex-Chief Executive Officer ("CEO"), ex-Chairman of the Board, and the late husband of Claimant Linda Lay ("Claimant").  The verified Complaint has attached to it and expressly incorporates as part of the Complaint a lengthy affidavit describing numerous details supporting the claims.  *See* FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

The Complaint alleges that Lay and other Enron executives participated in a conspiracy to defraud the investing public by means of manipulative statements, material omissions, and deceptive practices.  Document No. 2 at 3-19.  The conspiracy was headed by Jeff Skilling "until his sudden departure in August 2001," after which time Lay became its leader.  Id. at 8.  When Lay succeeded Skilling as CEO, numerous Enron employees allegedly apprised Lay of "Enron's mounting and undisclosed financial and operational problems."  Id. at 9.

The Complaint details numerous acts and devices allegedly employed by Lay and his co-conspirators to perpetuate the

2

conspiracy during the period from August 2001 until December 2, 2001, when Enron filed for bankruptcy.  Among other things, they made presentations to the public containing material misstatements and omissions regarding the losses suffered by Enron Energy Services (EES), id. at 12; falsely told Enron's auditors that Enron was committed to a water growth strategy and thereby avoided disclosing the impact on Enron of any goodwill impairment associated with Wessex, id. at 13-14; and made numerous false and misleading representations to the media, employees, investing public, securities analysts, Securities and Exchange Commission, and credit rating agencies, id. at 14-19.  On August 20, 2001, Lay falsely touted to Business Week the strength of Enron's financial position:  "'There are no accounting issues, no trading issues, no reserve issues, no previously unknown problem issues.  The company is probably in the strongest and best shape it has ever been in,'" id. at 9, 14.  On September 26, 2001, Lay told Enron employees that "'[t]he third quarter is looking great.  We will hit our numbers . . . . [T]he balance sheet is strong,'" although Lay knew that Enron was preparing to announce a significant overall quarterly loss.  Id. at 15.  Lay also stated that management was encouraged to buy Enron stock, and that he himself had recently purchased some.  Id.  In actuality, the Complaint alleges, he had "publicly purchased approximately $4 million in Enron stock but [also] sold $24 million in Enron stock back to Enron in sales that were

concealed from Enron employees and the investing public." Id. On
October 12, 2001, Lay told credit rating agencies "that Enron and
its auditors had 'scrubbed' the company's books and that no
additional write-downs would be forthcoming," when "in fact Lay
knew that Enron's international assets were being carried on
Enron's books for billions of dollars in excess of their fair
value." Id. at 16.

Rather than publicly report a loss in excess of $1 billion in
its third quarter earnings release on October 16, 2001, Lay
"artificially capped Enron's losses at that amount, by among other
things, making false statements to Enron's auditors." Id. at 10.
In addition, Lay "continued to make false and misleading statements
to the market about Enron's financial health." Id. In a third
quarter 2001 analyst call on October 16, 2001, it is alleged that
Lay made additional false or misleading statements regarding the
dire financial straits at Enron, id. at 16-17, and he is accused of
making similar misleading statements to analysts and to employees
on October 23, 2001, id. at 17-18, and again in an analyst call on
November 12, 2001, id. at 18.

The Complaint alleges that hundreds of millions of dollars in
proceeds were generated by the conspiracy, of which Lay derived
more than $95 million in criminal proceeds from trading Enron
stock, manipulating his Enron line of credit, and receiving an
incentive bonus. Id. at 19-22. In addition, Lay allegedly

4

employed his insider status at Enron to cause the Defendant Investment Partnership to sell Enron stock that generated another $3,956,649 in proceeds.  <u>Id.</u> at 21-22.

The Complaint alleges that portions of these proceeds can be traced into the Defendant Properties, <u>id.</u> at 22-25, including $2,502,320 of illicit gains into Defendant Real Property, <u>id.</u> at 22-23, $22,680 into Defendant Bank Account, and $10,170,149 into Defendant Investment Partnership.  According to the Complaint, the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

Claimant, as owner of and claimant to the Defendant Properties, now moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) contending that the Complaint fails to meet the pleading requirement set forth in Federal Rule of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") G(2)(f) and E(2)(a).

## II.  <u>Standards of Review</u>

### A.  <u>Standards Governing Rule 12(b)(6)</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6).  Motions to dismiss pursuant to Rule 12(b)(6) are "'viewed with disfavor and [] rarely granted.'"  <u>Kaiser Aluminum &</u>

5

Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050
(5th Cir. 1982) (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
FEDERAL PRACTICE AND PROCEDURE § 1357 (1969)).  When a district court
reviews the sufficiency of a complaint before it receives any
evidence, its task is inevitably a limited one.  *See* Scheuer v.
Rhodes, 94 S. Ct. 1683, 1686 (1974).  The issue is not whether the
plaintiff will ultimately prevail, but whether the plaintiff is
entitled to offer evidence to support its claims.  Id.  While a
complaint "does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do.  Factual allegations must be enough to raise
a right to relief above the speculative level, on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955,
1964-65 (2007) (citations, internal quotation marks and footnote
omitted).

In considering a motion to dismiss under Rule 12(b)(6), the
district court must construe the allegations in the complaint
favorably to the pleader and must accept as true all well-pleaded
facts in the complaint.  *See* Lowrey v. Tex. A & M Univ. Sys.,
117 F.3d 242, 247 (5th Cir. 1997).  "However, conclusory allega-
tions or legal conclusions masquerading as factual conclusions will

not suffice to prevent a motion to dismiss." <u>Fernandez-Montes v.</u>
<u>Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993).  While the
district court generally may not go outside the complaint in
addressing a Rule 12(b)(6) motion, it may consider documents
attached to the complaint, as well as documents that are referenced
in and central to the complaint.[1]  *See* <u>Kennedy v. Chase Manhattan</u>
<u>Bank USA, NA</u>, 369 F.3d 833, 839 (5th Cir. 2004); *cf.* <u>Scanlan v.</u>
<u>Tex. A & M Univ.</u>, 343 F.3d 533, 536 (5th Cir. 2003).

---

[1] Claimant challenges the Government's reliance on the
affidavit attached to the Complaint to carry its pleading burden.
Claimant's concerns are misplaced.  As observed above at page 2,
reliance upon an attached exhibit is expressly authorized by Fed.
R. Civ. P. 10(c).

The Fifth Circuit, like many other circuits, harbors no
reservation about recognizing attached affidavits as "written
instruments" for inclusion in Rule 10(c).  *See* <u>Lovelace v. Software</u>
<u>Spectrum, Inc.</u>, 78 F.3d 1015, 1017 (5th Cir. 1996) ("Normally, in
deciding a motion to dismiss for failure to state a claim, courts
must limit their inquiry to the facts stated in the complaint and
the documents either attached to or incorporated in the
complaint."); *see also* <u>N. Ind. Gun & Outdoor Shows, Inc. v. City of</u>
<u>S. Bend</u>, 163 F.3d 449, 452-53 & n.4 (7th Cir. 1998) ("[T]his Court
has interpreted the term 'written instrument' as used in Rule 10(c)
to include documents such as affidavits . . . ."); <u>United States v.</u>
<u>Parcels of Land</u>, 903 F.2d 36, 48 (1st Cir. 1990) (stating, in a
civil forfeiture suit, "We reject [the] contention that the filing
of such an attached affidavit along with a complaint cannot cure
pleading defects because the factual particularity must be in
the complaint *itself*.  We are unaware of any such formalistic
requirement."); *cf.* <u>Fin. Acquisition Partners LP v. Blackwell</u>, 440
F.3d 278, 283-84 (5th Cir. 2006) (implicitly considering factual
allegations asserted in affidavits as part of the complaint
itself).  The complaint in the instant case encompasses both the
Complaint and the attached affidavit, and the Motion to Dismiss
must be considered in that context.

B.   <u>Standards Governing Civil Forfeiture Actions</u>

The Supplemental Rules impose pleading requirements on the Government in civil forfeiture actions in addition to Fed. R. Civ. P. 8(a).   *See* FED. R. CIV. P. SUPP. R. E(2)(a) (2006).[2]   The Supplemental Rules require the complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."   <u>Id.</u>

The Fifth Circuit interprets Supplemental Rule E(2)(a) to mean that the complaint must assert "facts supporting a reasonable belief that it will be able to bear its burden at trial."[3]   <u>United States v. $49,000 Currency</u>, 330 F.3d 371, 376 n.8 (5th Cir. 2003) (citing <u>United States v. Mondragon</u>, 313 F.3d 862, 865 (4th Cir. 2002)).   The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983, heightened the requisite burden of proof at trial from probable cause, to proof "by a preponderance of the evidence,

---

[2] Both parties also rely on the pleading standard prescribed in Supplemental Rule G(2)(f), which became effective December 1, 2006, after this suit was filed.   *See* FED. R. CIV. P. SUPP. R. G advisory committee's notes; *see also* 2006 US ORDER 20 (C.O. 20) (Apr. 12, 2006) (stating that Supplemental Rule G governs cases filed after December 1, 2006, and "insofar as just and practicable, all proceedings then pending").

[3] This Fifth Circuit standard mirrors the requirement of newly adopted Supplemental Rule G(2)(f).   *See* FED. R. CIV. P. SUPP. R. G(2)(f).

that the property is subject to forfeiture." § 983(c)(1).  If the Government contends that the property to be forfeited was used to commit or facilitate a crime, or was involved in the commission of a crime, then the Government must also prove "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

At the pleading stage, "there is no requirement that *all* of the facts and evidence at the government's disposal be pled in the complaint; the government must simply plead enough specific facts for the claimant to understand the government's theory . . . and undertake her own investigation."  <u>United States v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Account No. 58-400738-1</u>, 255 F. Supp. 2d 56, 69 (E.D.N.Y. 2003).  Indeed, CAFRA itself cautions that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  *See* § 983(a)(3)(D).

## III.  <u>Discussion</u>

A.  <u>Dismissal of the Claims Against $10,170,149 of Defendant Investment Partnership, $22,680.14 in Defendant Bank Account, and $2,502,320 of Defendant Real Property</u>

Claimant argues first that the claims against $10,170,149 of Defendant Investment Partnership, the $22,680.14 in Defendant Bank Account, and $2,502,320 of Defendant Real Property should be

9

dismissed because they fail to meet the pleading requirement set forth in Supplemental Rule E(2)(a).

The Complaint alleges that $10,170,149 of Defendant Investment Property, $22,680.14 in Defendant Bank Account, and $2,502,320 of Defendant Real Property are subject to forfeiture under § 981(a)(1)(C) because those properties constitute proceeds obtained from the commission of offenses constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), namely: (1) fraud in the sale of securities in violation of 15 U.S.C. §§ 78j(b) and 78ff; (2) wire fraud in violation of 18 U.S.C. § 1343; and (3) conspiracy to commit securities fraud under 18 U.S.C. § 371.

The brief summary of the Complaint given above is distilled from a Complaint with its incorporated Affidavit of 26 pages, which provides ample allegations of the factual premises for the Government's forfeiture claims.  The Complaint sets forth in numerous particulars the alleged criminal activity of Lay and his co-conspirators in committing and conspiring to commit fraud in the sales of securities, and in committing wire fraud; it spells out when and how Lay derived $95 million in criminal proceeds from trading Enron stock, manipulating his Enron line of credit, and receiving an incentive bonus; and it alleges how the Government traces portions of those criminal proceeds into the Defendant Properties, complete with dates, bank account numbers, and Lay's

10

specific financial transactions transferring the criminally derived proceeds.

In sum, the Complaint alleges facts that elucidate the underlying offenses, the proceeds therefrom, and the substantial connections to the Defendant Properties.  The Complaint here does far more than "track[] the language of the statute."  United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 12210-22 (10th Cir. 1986) (condemning a complaint that "state[d] only that [a] car was used, on or before October 14, 1983, 'to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of . . . or cocaine'" (omission in original)).  Nor does the Government "merely describe[] the property, and, parroting the language of the statute, state[] that [the property] was forfeitable."  United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 638-39 (1st Cir. 1988) (finding a complaint insufficient where it stated only: "[T]he defendant real property with buildings, appurtenances, and improvements is a proceed traceable to exchanges of controlled substances . . . [; and] by reason of the foregoing, the defendant real property, with buildings, appurtenances, and improvements is forfeited to the United States").  In this case, Claimant fails to "acknowledge the numerous connections the government has alleged" between the money and the alleged offenses.  United States v. $109,086, No. H-04-3727, 2005 WL 1923613, at *4 (S.D. Tex. Aug. 10, 2005) (Rosenthal, J.).   In effect, "the

11

claimant[] blur[s] the line between pleading and proof. The government need not set out the evidence of its allegations in its complaint or plead every fact at its disposal." Id. at *5 (citing 18 U.S.C. § 983(a)(3)(D)). Accepting the well-pleaded facts as true, the detailed allegations in the Complaint state circumstances from which the claim arises with such particularity that Claimant is fully able to commence an investigation of the facts and frame a responsive pleading. See Supp. R. E(2)(a). Moreover, the detailed facts set forth in the Complaint establish a reasonable belief that the Government will be able to show by a preponderance of the evidence that the properties are subject to forfeiture; or, in other words, that $10,170,149 of Defendant Investment Property, $22,680.14 in Defendant Bank Account, and $2,502,320 of Defendant Real Property, constitute proceeds traceable to Lay's alleged fraud in the sale of securities, wire fraud, and conspiracy to commit securities fraud. See Supp. R. G(2)(f).

B.   Dismissal of the Claim Against the Balance of Defendant Real Property

Claimant also argues that the claim against the balance of Defendant Real Property should be dismissed as insufficient under the pleading standard in Supplemental Rule E(2)(a) because the claim fails to specify how the property was substantially connected to money laundering. The Complaint alleges that the balance of Defendant Real Property, that is, any value over the aforementioned

12

$2,502,320, is subject to forfeiture pursuant to § 981(a)(1)(A) because it constitutes property involved in a transaction violating the money laundering statute, 18 U.S.C. § 1957.

To prove a money laundering offense under 18 U.S.C. § 1957(a), the Government must prove: (1) property valued at more than $10,000 was derived from a specified unlawful activity; (2) the wrongdoer engaged in a monetary transaction with the property; and (3) the wrongdoer knew that the property was derived from unlawful activity. United States v. Rodriguez, 278 F.3d 486, 490 (5th Cir. 2002). To obtain a forfeiture of property involved in money laundering, the Government must not only meet the pleading standard of Supplemental Rule E(2)(a), but also prove "that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

As discussed above, the Complaint, in great detail, proffers a litany of alleged facts that tie Lay's actions to specified illegal activities, resulting in large sums of money totaling well over the requisite $10,000 threshold. Document No. 2 at 19-22. It is alleged that Lay engaged in monetary transactions by transferring illicit sums of money to other accounts and to third parties, knowing that the sums of money were derived from the various specified illegal acts. Id. at 9-11, 22-25. Additionally, the Complaint alleges a direct connection between the sums of money received from those acts and Defendant Real Property. The

13

Complaint points to alleged transactions where the illicit funds were used to pay down the outstanding mortgage on Defendant Real Property. Id. at 22-23. The affidavit alleges that Lay paid off the remainder of the mortgage by making million dollar payments of criminal proceeds on December 6 and 7, 2001, within five days after Enron declared bankruptcy. See id. at 10, 22-23.

Accepting the well-pleaded facts as true, the Complaint establishes a reasonable belief that the Government will be able to show by a preponderance of the evidence that the balance of Defendant Real Property is subject to forfeiture; or, in other words, that it was involved in and substantially connected to money laundering.[4] Again, "the claimant[] blur[s] the line between pleading and proof." $109,086, 2005 WL 1923613 at *5 (citing 18 U.S.C. § 983(a)(3)(D)). The Government's complaint satisfies the pleading standard set forth in Supplemental Rule E(2).

---

[4] While Claimant makes arguments concerning how much of Defendant Real Property is subject to forfeiture, it seems that "[w]hether none, all, or only a portion of the defendant property is forfeitable is not determined at the pleadings stage, but at trial." United States v. One Parcel of Real Property, 921 F.2d 370, 375 (1st Cir. 1990) (citing Pole No. 3172, Hopkinton, 852 F.2d at 640).

IV.  <u>Order</u>

For the reasons stated, it is ORDERED that Claimant Linda Lay's Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 15) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 13th day of November, 2007.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE